FILED

2024 Mar-11  PM 02:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **NEW SOUTH MEDIA GROUP LLC, *et al.*,**<br>        Plaintiffs,<br>**v.**<br><br>**CITY OF RAINBOW CITY, ALABAMA,**<br>        Defendant. | **Case No. 4:22-cv-461-CLM** |

## MEMORANDUM OPINION

This case is about a city's ban on billboards. New South Media Group, LLC, Deverick Williams, William Wilson, and Rainbow Powder Coatings, Inc. (collectively, "Plaintiffs") applied to Rainbow City, Alabama ("Rainbow City") for four sign permits. Rainbow City denied all four applications because, in the city's opinion, all four applications sought to erect a billboard and the city strictly prohibits billboards.

Plaintiffs sue Rainbow City for violating their First Amendment rights. The city moves for summary judgment (doc. 12), and Plaintiffs move for partial summary judgment. (Doc. 29). For the reasons stated within, the court **GRANTS IN PART** Rainbow City's motion (doc. 12) and **DENIES** Plaintiffs' motion as **MOOT**. (Doc. 29).

## BACKGROUND

The Parties: New South Media Group, LLC ("New South") is a content development studio that erects and operates signs in Alabama for businesses, individuals, churches, charities, and public governmental agencies. (Doc. 1, p. 1; www.newsouthmedia.com/narrative).

Plaintiffs Williams and Wilson each post signs on their properties in Rainbow City that are readily visible from the highway. Both Williams and Wilson entered into agreements with New South to post signs on their

properties: two signs for Williams and one for Wilson. Rainbow Powder Coatings, Inc. is a local Rainbow City business that uses signs to communicate with its customers and the public. (Doc. 1, p. 3). All four plaintiffs join in this suit to challenge the constitutionality of Rainbow City's Sign Regulations.[1] (Doc. 30-2, pp. 77-89).

Relevant Sign Regulations: The Sign Regulations begin with their purpose in Section 210, which "acknowledges the legitimate public need for business visibility through outdoor advertising" and "the legitimate public need for a beautiful and uncluttered community and the City's legitimate need to ensure safe traffic circulation on City streets." (Doc. 30-2, p. 77).

Section 211 then defines certain terms within the Sign Regulations. Relevant here, Section 211 defines "billboard" as "[a]ny sign owned by a person, corporation, or other entity that is erected for the purpose of selling, leasing, or donating the display space on that sign to an advertiser." (Doc. 30-2, p. 78).

Section 212 lists the requirements for permits, fees, and inspections. Section 212(a) states: "Except where this chapter explicitly exempts a sign, all signs erected shall require a sign permit issued by the Zoning Administrator."

Section 213 lists the permit exemptions mentioned in Section 212. The court lists them, emphasizing the four at issue: (1) historic markers, (2) traffic control signs, (3) directional signs, (4) **flags**, (5) **artistic displays**, (6) real estate or rental signs, (7) construction site identification signs, (8) window signs, (9) **political signs**, (10) garage or yard sale signs, (11) **special event signs** and decorations, (12) entrance/exit signs, (13) farm information signs, (14) vehicle signs, (15) building nameplates, and (16) legal notices and official instruments. *Id.* at 81-84 (emphasis added). Although these signs are exempt from permits, they "are permitted in

---

[1] The Rainbow City Sign Regulations can be found in Rainbow City's Zoning Ordinance #360, Sections 210-221.

accordance with the standards contained within this section and any *other applicable provisions of these sign regulations*." (emphasis added).

Immediately following the exemptions, Section 214 states: "Except where qualified below, the following signs are specifically prohibited throughout the city," and the section includes "billboards" as a prohibited type of sign. *Id.* at 84.

<u>New South's Sign Applications</u>: On April 6, 2021, New South applied for four sign permits in Rainbow City. Application 1 was for an artistic display sign to be posted at 1215 West Grand Avenue. (Doc. 24, pp. 10-12). Application 2 was for a flag sign to be posted on vacant property adjacent to East Grand Avenue. (Doc. 28, pp. 10-12). Application 3 was for a special event sign to be posted on vacant property adjacent to East Grand Avenue. (Doc. 26, pp. 13-15). And Application 4 was for a political sign to be posted at 3500 Rainbow Road. (Doc. 21, pp. 16-18):

**Initial Content**







Application 1: Artistic Display

(Doc. 24, p. 13)

**Initial Content**





Application 2: Flag

(Doc. 28, p. 19)

**Content Examples**





**Initial Content**







Application 3: Special Event                   Application 4: Political

(Doc. 27, p. 1)                                (Doc. 22, p. 2)

New South thought that each sign fell within one of Section 213's permit exemptions. So in each application, New South described the sign as "exempt." *See* Doc. 21, p. 17 ("Exempt Political Sign"); Doc. 24, p. 11 ("Exempt Artistic Display"); Doc. 26, p. 14 ("Exempt Special Event Sign"); Doc. 28, p. 11 ("Exempt Flag").

Three days after New South submitted the applications, Rainbow City's Building Department Clerk, Heather Hill, sent an email informing New South that the City could not process the sign applications because new billboards are prohibited throughout Rainbow City.[2] (Doc. 20, p. 1). But this email never made it to New South because Hill wrongly typed the recipient's email as "neil@newssouthoutdoor.com" instead of "neil@newsouthoutdoor.com." As shown in the red circle, Ms. Hill included an extra "s."

---

[2] Section 214 states: "Except where qualified below, the following signs are specifically prohibited throughout the city: . . . (13) Billboards."

4

**From:** Building Dept. [mailto:build@rbcalabama.com]
**Sent:** Friday, April 09, 2021 1:09 PM
**To:** 'neil@newssouthoutdoor.com' <neil@newssouthoutdoor.com>
**Subject:** RE: Sign applications

Mr. Bell,

Thank you for your interest in Rainbow City but I must inform you that new Billboards are prohibited throughout the City, therefore we are unable to process your sign applications.

*Heather Hill*

Clerk, Building Dept.
City of Rainbow City, AL
3700 Rainbow Drive
Rainbow City, AL 35906

About two months later, Ms. Hill forwarded the email to Laura Lloyd, who then forwarded it to New South's attorney, Adam Webb. Mr. Webb responded to Ms. Lloyd, informing her that the email address in the City's initial email was misspelled, that New South never received the denial of the sign applications, and that it would like to appeal the denials and seek variances to the Board of Adjustment. (Doc. 19, p. 95). Ms. Hill sent New South the variance applications and stated that the next Board of Adjustment meeting was scheduled for July 6, 2021. *Id.* at 93.

New South promptly appealed the denial of each sign application to the Zoning Board of Adjustment[3] and submitted variance applications for each of the four proposed signs. (Doc. 1, p. 6). As grounds for its appeals, New South argued that (1) Section 214's prohibition on billboards should be read in the context of Section 213, which expressly exempts the types of signs it sought to display; and (2) the City's Sign Regulations were unconstitutional, making the denials a legal nullity. *Id.* at 7.

---

[3] The Board of Adjustment has the power "to hear and decide appeals where it is alleged there is error in any order . . . made by an administrative official in the enforcement of this ordinance or of any ordinance adopted pursuant thereto." Doc. 30-2, p. 126 (Zon. Ord. § 363(a)(1)).

The Rainbow City Board of Adjustment heard New South's appeal and variance requests on July 6th. At the hearing, New South argued that its applications were exempt from the Sign Regulations. The Chairman of the Board, Rodney Prickett, stated that it was his understanding that Rainbow City had enforced its prohibition against billboards for 20 years. Prickett entertained a motion to approve the variance, but the motion failed. (Doc. 13-3, pp. 1-2). So the Board affirmed the denial of New South's applications and denied its variance requests:

> Rodney Prickett stated that it was his understanding that the prohibition against billboards had been enforced since Mayor Sue Glidewell was the Mayor and that has been the precedent and position of the City with the Ordinance going back 20 years. Mr. Bell read excerpts from the Rainbow City Zoning Ordinance and a prepared statement that is included with his application for his request for a variance.
>
> Bill Wilson, Owner of Rainbow Powder Coating at 1215 West Grand Ave was present to speak in favor of the variance. Mr. Wilson made reference to 2 pre-existing billboards and local business signage along West Grand near his business.
>
> Bob McNeal expressed concerns of the lights from the signs effecting the apartment complexes that are in close proximity to Kids Way. Mr. Bell explained that candle foot could be adjusted. Mr. McNeal also addressed concerns with the signs causing a distraction for drivers with the high volume of traffic through the area.
>
> Rodney Prickett entertained a motion to approve the variance. The request for variance died due to lack of motion.

New South first appealed the Board's denial to the Circuit Court of Etowah County, Alabama, Case No. cv-2021-900345. In Count One, it appealed the Board's decision under Ala. Code § 11-52-81. In Count Two, it sought relief for violation of its constitutional rights. The parties agreed that New South would dismiss Count Two from the state court action and bring its constitutional challenge against Rainbow City in a separate action—this action.

This Lawsuit: Plaintiffs sue Rainbow City here, alleging that the City Sign Regulation provisions (§§ 211-214, 217, and 219) and the City Zoning Ordinance provisions that applied to its variance applications (Zon. Ord. §§ 363, 366) are speech restrictions that violate the United States Constitution and Article I, Section IV of the Alabama Constitution.

(Doc. 1, p. 11). Plaintiffs argue these provisions are a nullity and an invalid basis to disallow their signs:

- <u>Section 213</u>: "Signs Exempt from Sign Permits"
  - o Plaintiffs argue these provisions are content-based and fail strict scrutiny;
- <u>Section 212</u>: Required Permits
  - o Plaintiffs argue these provisions are a prior restraint on free speech that lacks procedural safeguards because city officials are not limited by any time constraints when approving required sign applications;
- <u>Sections 213(1), (4), (11); Section 214(11); Section 217(b)</u>
  - o Plaintiffs argue these provisions afford City officials unbridled discretion to permit signs without reference to objective standards;
- <u>Sections 212(4), (6)</u>
  - o Plaintiffs argue these provisions afford City officials power to request "catch all" details to determine compliance;
- <u>Section 366(a), Section 363(a)</u>
  - o Plaintiffs argue these provisions afford City officials unlawful and subjective discretion in the variance process.

(Doc. 1, pp. 11-13).[4]

Rainbow City moves for summary judgment (doc. 12), and Plaintiffs move for partial summary judgment. (Doc. 29).

## STANDARD OF REVIEW

Summary judgment is appropriate only when the moving party shows there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it is one that might affect the outcome. *Anderson v. Liberty*

---

[4] Although Plaintiffs also generally state in the complaint that Section 211 and 219 are unconstitutional regulations, they fail to advance supporting arguments. So the court finds that Plaintiffs have abandoned these claims.

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party must go beyond mere allegations to offer specific facts creating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 324. In reviewing a motion for summary judgment, this court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002).

## DISCUSSION

## I.    Rainbow City's Motion for Summary Judgment

Rainbow City says it denied all four of New South's applications for the same simple reason: Section 214 bans **all** billboards, and each application sought to permit a billboard.[5] Once the city determined that the applications sought to permit a prohibited billboard, content didn't matter—making Section 212's permit process and 213's content-based permit exemption list irrelevant.

Rainbow City bases its motion for summary judgment on three grounds: (1) Plaintiffs were not injured by any time constraints or lack of procedural safeguards, so they lack standing to challenge those Sign Regulation provisions; (2) the Sign Regulations pass constitutional muster because the reason for Plaintiffs' denials is content-neutral and is a reasonable time, place, and manner restriction on commercial speech; and (3) the Supreme Court cases that govern this case also govern Plaintiff's claims under the Alabama Constitution. Because standing is a jurisdictional requirement, the court starts with standing.

### A. Standing

The federal Constitution limits federal courts' subject matter jurisdiction to "Cases" and "Controversies." U.S. Const. Art. III, § 2.

---

[5] A billboard is (a) a "sign" (*i.e.*, a visible structure that would direct attention to a message or product), (b) owned by the applicant, (c) erected for the purpose of selling or leasing or donating the display space to an "advertiser" (*i.e.*, an entity seeking to convey a visual message to the public). *See* Section 211 definitions: billboard, sign, advertiser.

Standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims" and "the court is powerless to continue." *Maverick Media Grp., Inc. v. Hillsborough Cnty., Fla.*, 528 F.3d 817, 819 (11th Cir. 2008) (internal citations omitted).

To show standing, a plaintiff must prove three elements: (1) he suffered an injury in fact; (2) the defendant caused that injury; and (3) a favorable decision will likely redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). As the party invoking jurisdiction, Plaintiffs bear the burden of proving that they have standing. *Id.* at 561. In billboard litigation, a plaintiff only has standing to challenge provisions of an ordinance that affect its activities, *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1273 (11th Cir. 2006), and under which it has personally suffered harm. *Granite State Outdoor Advert., Inc. v. City of Clearwater, Fla.*, 351 F.3d 1112, 1117 (11th Cir. 2003).

Rainbow City says Plaintiffs only have standing to challenge Section 214's billboard prohibition because Section 214 was the sole basis for the city's adverse decision. (Doc. 31, pp. 10-11). Plaintiffs disagree; so the court considers the other provisions that Plaintiffs claim to have standing to challenge.

i.   Section 213 "Signs Exempt from Sign Permits": Content-Based Argument

Section 213 lists the content-based exemptions from Section 212's permit requirement. Plaintiffs argue that each of their signs fall within Section 213's list of "Signs Exempt from Sign Permits," and inclusion on this list shields their signs from Section 214's ban on billboards. According to Plaintiffs, Section 213 provides context to Section 214: if a proposed sign displays permit-exempt content, then it doesn't matter that the content is presented on Section 214 prohibited mediums like billboards.

To determine if Plaintiffs are right, we start "with the text—and, if we find it clear, we end there as well." *Heyman v. Cooper*, 31 F.4th 1315, 1318 (11th Cir. 2022) (citing *Young v. Grand Canyon Univ., Inc.*, 980 F.3d 814, 818 (11th Cir. 2020)).

Section 212 requires sign permits in Rainbow City:

**Sec. 212.   Required Permits, Fees, and Inspections.**

(a)    Except where this chapter explicitly exempts a sign, all signs erected shall require a sign permit issued by the Zoning Administrator.  In addition, whether a sign is exempt or not, city building and electrical codes may require additional permits.

Section 213 states signs exempt from Section 212:

**Sec. 213.  Signs Exempt from Sign Permits.**

The following signs are exempt from required sign permits and all associated fees, and are permitted in accordance with the standards contained within this section and any other applicable provisions of these sign regulations.  All exempt signs are permitted in any district if related to a permitted activity on a lot.

Section 214 lists prohibited signs:

**Sec. 214.  Sign Prohibitions.**

Except where qualified below, the following signs are specifically prohibited throughout the city:

   (13)    Billboards.

Combined, these sections are easy to understand: All signs require a permit (Section 212), except those listed in Section 213. But no sign can be erected if it's a billboard (Section 214). So even though Section 214 comes last, it's of primary importance: If a sign is "specifically prohibited throughout the city," it doesn't matter whether its content could otherwise be permitted. It cannot be erected.

Section 213—the content-based exemption list—supports this plain reading when it says that listed signs are permitted "in accordance with

the standard contained within this section [Section 213] *and any other applicable provisions of these sign regulations*." In other words, fitting within Section 213's exemption list alone is not enough; the applicant must fit within all other "applicable provisions," including Section 214's outright ban on billboards.

The record supports only one conclusion: Rainbow City denied New South's applications because each sought to permit a billboard that was prohibited under Section 214. So the city's application of Section 214—and Section 214 alone—caused Plaintiffs' alleged injury. Section 213 was irrelevant to the city's decision, so Section 213 could not have caused Plaintiffs' alleged injury. That means that no matter how this court interprets Section 213, the court's interpretation cannot redress Plaintiffs' injuries. So Plaintiffs lack standing to challenge Section 213.

ii.   <u>Section 212 Permitting Requirement: "Prior Restraint that Lacks Procedural Safeguards" Argument</u>

The Eleventh Circuit has found that when challenging the constitutionality of a process or procedure (*i.e.*, affording the city unlimited time to make a decision), plaintiffs lack standing if they do not link their injury to that process or procedure. *See Ga. Elec. Life Safety & Sys. Ass'n v. City of Sandy Springs, Ga.*, 965 F.3d 1270, 1279 (11th Cir. 2020); *see also Granite State Outdoor Advert., Inc. v. City of Clearwater, Fla.*, 351 F.3d at 1117 (finding that plaintiff suffered no injury where city denied permits within a reasonable time: the same day they were submitted).

Plaintiffs argue they have standing to challenge the lack of procedural safeguards within the City's Sign Regulations because, as applied to them, Section 212 requires sign applicants to obtain permits from City officials but contains no time limits on the initial decision-making process. And Plaintiffs say they were injured by the lack of time constraints because the City took almost two months to notify them that it denied their applications and Plaintiffs could not post the signs during those two months. (Doc. 35, pp. 12-14).

The two-month delay argument fails to confer standing for two reasons. First, the City's answer was always "no." While it is true that the City sent the written notice of denial to the email wrong address, and that mistake put off Plaintiffs' appeal for two months, the City denied the applications within 3 days of their filing—*i.e.*, from April 6 (filing) to April 9 (denial). So the argument that the mistaken email address caused a two-month period of prohibition is factually incorrect. The April 9th *decision* caused Plaintiffs' injury during the first two months, not typing in the wrong email address. Although the City did not deny the applications the day they were submitted, *see Granite State Outdoor Advert., Inc. v. City of Clearwater, Fla.*, 351 F.3d at 1117, three days is nonetheless a reasonable time.

Second, and more importantly, timeliness did not factor into the City's first or its final decision. When the email error was discovered, the city promptly gave Plaintiffs appeal and variance forms, and the Board heard Plaintiffs' appeal. So Section 212's provisions on time and procedure did not cause Plaintiffs' injury. As explained, *only* the City's reading of Section 214's prohibition on billboards harmed Plaintiffs. So Plaintiffs lack standing to challenge Section 212 on process or procedure grounds.

    iii.    <u>Unbridled Discretion: No Objective Standards and Ability to Request "Catch All" Details to Determine Compliance</u>

The unbridled discretion doctrine is usually reserved for permitting schemes where the official has the power to grant or deny a permit for any reason or no reason at all. *See Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266, 1295 (11th Cir. 2021); *see, e.g.*, *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1220 (11th Cir. 2017) ("[T]he plainest example of an unconstitutional grant of unbridled discretion is a law that gives a government official power to grant permits but that provides no standards by which the official's decision must be guided."); *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 134 (1992) ("The fee assessed will depend on the administrator's measure of the amount of hostility likely to be created by the speech based on its

content. Those wishing to express views unpopular with bottle throwers, for example, may have to pay more for their permit."); *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150 (1969) ("For in deciding whether or not to withhold a permit, the members of the Commission were to be guided only by their own ideas of 'public welfare, peace, safety, health, decency, good order, morals or convenience.'").

Plaintiffs allege that Rainbow City gave its official agent excessive discretion in the Sign Regulations; and this excessive discretion hurt Plaintiffs because a city official reviewed their applications and determined the content did not meet plainly stated exemptions, resulting in the signs not being posted for two years. (Doc. 35, pp. 12-14). Plaintiffs argue these provisions afford city officials unbridled discretion to permit signs without reference to objective standards:

Section 213(1):

> (1)   *Historic markers.*  Where approved by the City Council.

Section 213(4):

> (4)   *Flags.* Any official flag of a government entity and banners of a religious, charitable or fraternal organization.  This exemption shall include the supporting device or flag pole.  However, no property shall display more than four (4) flags without prior approval from the City Council.

Section 213(11):

> (11)   *Special event sign and decorations.*  A temporary or permanent sign indicating a special event such as a grand opening, traveling public exhibits, fair, carnival, circus, festival, personal announcements of births, marriages, birthdays, or similar events may be erected on the lot where the event is to take place, provided that such signs do not exceed the maximum applicable height and surface area requirements for the type of sign used and the sign is installed not more than thirty (30) days prior to the event and removed not more than ten (10) days after the event has occurred.  Decorative flags, banners, and bunting shall be allowed only for city-wide celebrations, conventions, and commemorations when specifically authorized by the Mayor and City Council.  This exemption also shall apply to decorative lights and displays celebrating any legal holiday.

Section 214(11):

(11)   Portable signs, unless approved by the Zoning Administrator for a grand opening or other special event, to be displayed only for the duration of the event.

Section 217(b):

(b)   *Freestanding signs.* In zoning districts where freestanding signs are permitted, each lot of record may have not more than one (1) freestanding sign. Freestanding signs shall be securely fastened to the ground or to some other metallic or concrete supportive structure so that there is no danger that either the sign or the supportive structure may be moved by the wind or other forces of nature and cause injury to persons or property. The City Council may approve one (1) additional freestanding sign for any existing lot of record that is accessed by more than one collector or arterial street on opposing sides of the property. Furthermore, if a development is located on a corner lot that has at least 100 feet of frontage on each of the two intersecting public streets, then, the City Council may allow not more than one freestanding sign along each side of the development bordered by such streets. Freestanding signs shall be located as close a possible to the main traffic access to the property, but shall not be located closer than four (4) feet to the right-of-way of a public street. In addition, no freestanding sign shall be located less than thirty (30) feet from another freestanding sign on the same side of the street. All freestanding signs shall comply with the following dimensional requirements.

Next, Plaintiffs argue these provisions afford City officials power to request "catch all" details to determine compliance:

Section 212(4):

(4)   A complete description of the sign(s) to be erected, including, but not limited to number, type, freestanding or attached, method of illumination, on or off-premises display, and setbacks.

Section 212(6):

(6)   Other details sufficient for the Zoning Administrator to determine compliance with the requirements of this chapter.

The Eleventh Circuit has addressed similar challenges in several cases in which plaintiffs alleged that certain sign ordinance provisions granted unbridled discretion and lacked procedural safeguards. The Circuit has found that plaintiffs have standing to challenge the overbroad provisions if the city used those provisions to deny their permits. *See*

*Granite State Outdoor Advert., Inc. v. City of Fort Lauderdale*, 194 F. App'x 754, 758 (11th Cir. 2006); *Tinsley Media, LLC v. Pickens Cnty.*, Ga., 203 F. App'x 268, 272 (11th Cir. 2006); *Advantage Advert., LLC v. City of Hoover, Ala.*, 200 F. App'x 831, 835 (11th Cir. 2006) (finding that a plaintiff attempting to erect off-premises billboards lacked standing to challenge the lack of procedural safeguards and permitting requirements because the ordinance prohibited all off-premises signs and billboards); *Granite State Outdoor Advert., Inc. v. City of Clearwater, Fla.*, 351 F.3d at 1117; *Maverick Media Grp., Inc.*, 528 F.3d at 823.

But the Circuit has also found that, even if the Court finds some provisions unconstitutional, there is no redressability if an independent provision would still prevent the challenged activity. For example, in *Granite State Outdoor Advert., Inc. v. City of Fort Lauderdale*, the City of Fort Lauderdale denied Granite State's sign permit applications because the City did not permit "outdoor advertising display signs and billboards" under § 47–22.11(E) of its sign ordinance. *Granite State Outdoor Advert., Inc. v. City of Fort Lauderdale*, 194 F. App'x at 755. Granite State sued, challenging the constitutionality of the entire sign ordinance (both facially and as applied). Among many other challenges, it said the ordinance granted city officials unbridled discretion and lacked procedural safeguards. The district court found that Granite State lacked standing to challenge any provision other than § 47–22.11(E). *Id.* The Eleventh Circuit affirmed, finding that Granite State lacked standing to challenge the unbridled discretion of city officials because (a) it had not established that its displays were governed by those provisions and (b) it was not subject to those provisions because its displays were categorically prohibited as billboards. *Id.* at 758. Lastly, the court found that Granite State lacked standing to challenge several provisions as prior restraints because even if those exemptions were struck as unconstitutional, Granite State still would be unable to erect a billboard because of § 47–22.11(E)'s prohibition. *Id.* So Granite State could not establish that a favorable decision would redress its injury.

The Circuit came to a similar result in *Tinsley Media, LLC v. Pickens Cnty., Ga.* In *Tinsley*, Pickens County denied eleven of Tinsley's sign permit applications because billboards were prohibited under its 1999 ordinance. Tinsley sued, challenging the constitutionality of the billboard prohibition and over 40 other exceptions within the ordinance, and argued that the ordinance lacked several procedural safeguards. *Tinsley*, 203 F. App'x at 271. The court found that Tinsley had standing to challenge the prohibition on billboards but lacked standing to challenge the other exceptions or the lack of procedural safeguards. The court reasoned that Tinsley failed to satisfy the "redressability" requirement of standing because even if the court declared the exceptions unconstitutional, the County's billboard prohibition would remain. *Id.* at 274.

Here, Plaintiffs' unbridled discretion arguments fail to confer standing for the same reasons. First, and most obvious, even if this court found that certain sections give city officials too much discretion, Section 214 independently prevents Plaintiffs from erecting billboards, so any court ruling that other provisions are overbroad would not redress Plaintiffs' injury. *Granite State Outdoor Advert., Inc. v. City of Fort Lauderdale*, 194 F. App'x at 758; *Tinsley*, 203 F. App'x at 274. Setting that aside, Plaintiffs submitted applications for signs that they say fall into these categories: Section 213(4) flags (less than four); Section 213(5) artistic displays; Section 213(9) political signs; and Section 213(11) special event signs. None of these signs fall into sections giving City officials discretion, so Plaintiffs cannot show they were subject to unbridled discretion in these provisions.[6] Nor can Plaintiffs show they were subject to Section 214(11) because they did not apply for portable sign permits under this provision. Finally, while Plaintiffs' applications were for freestanding signs, Plaintiffs have not shown they were subject to Section 217(b)'s provisions affording City officials discretion or that they were injured by City officials applying such discretion to their sign applications.

---

[6] The portion of Section 213(11) granting City officials discretion is limited to decorative flags, banners, and bunting—it does not apply to special event signs.

For all of these reasons, Plaintiffs have failed to show that any of these provisions caused them injury.

Next, Plaintiffs allege that Sections 212(4) and (6) afford City officials power to request "catch all" details to determine compliance with the Sign Regulations. Plaintiffs say they submitted sign permit applications containing all materials that the Regulations required. (Doc. 1, p. 5). But Plaintiffs provide no support that City officials denied their sign applications because they relied on a "complete description" or "other details" required for the applications to be approved or denied. The only evidence that either party provides in the record as the City's basis for denying Plaintiffs' sign applications is Section 214's billboard ban. So Plaintiff has failed to show that Section 212(4) and (6)'s requirements caused them an injury. And even if Plaintiffs showed any injury from these provisions that the court found unconstitutional, Plaintiffs cannot show redressability because they would still be subjected to the City's billboard ban. *See Granite State Outdoor Advert., Inc. v. City of Fort Lauderdale*, 194 F. App'x at 758; *see also Granite State Outdoor Advert., Inc. v. Cobb Cnty., Ga.*, 193 F. App'x 900, 906 (11th Cir. 2006). So Plaintiffs' standing argument for these provisions fails.

iv.   <u>Unbridled Discretion: Zoning Board of Adjustment Variance Process</u>

Plaintiffs argue that Sections 366(a) and 363(a) afford City officials unlawful and subjective discretion in the variance process, allowing the Board to authorize variances if certain conditions are met, but not mandating that they do so. For example, Plaintiffs say officials can deny variances if they find the variance would be "contrary to the public interest" or against the "spirit of th[e] ordinance."

Section 366(a) says:

**Sec. 366. Variance procedures.**

(a)     *Justification for variance.*  Variances to the terms of this ordinance may be granted in specific cases upon a finding by the Board of Adjustment that the variance will not be contrary to the public interest, that, owing to special conditions, a literal enforcement of the provisions of this ordinance will result in unnecessary hardship, and that the spirit of this ordinance shall be observed and substantial justice done.  More specifically, the Board shall determine all of the following criteria have been satisfied:

Section 363(a) says:

**Sec. 363. Powers and Duties.**

(a)     The Board of Adjustment shall have the following powers:

(1)     To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of this ordinance or of any ordinance adopted pursuant thereto;

(3)     To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done.

Again, even if the court found these provisions unconstitutional, Plaintiffs have failed to present evidence that the Board denied their variance applications because of any discussion that their applications were "contrary to the public interest" or against the "spirit of the ordinance." The Board denied the variance application because of the billboard ban.[7] Plaintiffs cannot show that the discretion baked into Sections 363 and 366 *could* result in unlawful favoritism, nor have they shown that those sections *have* resulted in a "pattern of unlawful favoritism." *Granite State Outdoor Advert., Inc. v. City of St. Petersburg, Fla.*, 348 F.3d 1278, 1282 (11th Cir. 2003). So Plaintiffs have not met their burden of showing that these provisions caused their injury or that a

---

[7] *See supra* at 6. Another board member expressed concerns about lights affecting a nearby apartment complex and distracting drivers in a nearby high-traffic area. (Doc. 13-3, pp. 1-2).

finding that the provisions are unconstitutional would redress that injury.[8]

     v.    <u>Facial Challenges</u>

> "[W]hen a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 755–56, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988). "If it is one who is subject to, or imminently will be subject to, the provisions that allegedly grant unbridled discretion, then [the plaintiff] has standing to challenge these provisions." *CAMP,* 451 F.3d at 1274 (internal quotation omitted).

*Advantage Advert., LLC*, 200 F. App'x at 835. That said, a plaintiff can only bring facial challenges to provisions under which he has allegedly sustained an injury in fact. *Id.* at 833; *CAMP*, 451 F.3d at 1271.

    Plaintiffs say even if they weren't injured by lack of time constraints or unbridled discretion to City officials, they have standing to challenge the Sign Regulation provisions *facially* because their existence injures local citizens by intimidating them into censoring their own speech. (Doc. 35, pp. 14-17). But Plaintiffs' standing to raise a facial challenge is not absolute; Plaintiffs still must show that they are subject to the discretionary ordinance they seek to facially challenge. *See Granite State Outdoor Advert., Inc. v. City of Fort Lauderdale*, 194 F. App'x at 757; *Advantage Advert., LLC*, 200 F. App'x at 833; *Granite State Outdoor Advert., Inc. v. City of Clearwater, Fla.*, 351 F.3d at 1118.

---

[8] Even if Plaintiffs presented evidence that the Board denied their variance applications because they were "contrary to the public interest" or "against the spirit of the ordinance," Plaintiffs provide no binding or persuasive case law to support that these types of determinations are unconstitutional variance procedures. And the court finds none.

As stated throughout, Plaintiffs have failed to show that they—or any other plaintiff who seeks to erect a billboard in Rainbow City—would be injured by application of the unbridled discretion provisions that they challenge. All evidence points to Section 214's prohibition on billboards as the sole cause of Plaintiffs' injury in this and future cases involving billboard applications. So no federal court decision on provisions other than Section 214 would redress Plaintiffs' injury. Even if the court found any other challenged provision unconstitutional, Plaintiffs are still unable to post their signs under Section 214(13)'s billboard ban (which Plaintiffs do not challenge). *See KH Outdoor, L.L.C. v. Clay Cnty., Fla.*, 482 F.3d 1299, 1303 (11th Cir. 2007) (finding challenge to other provisions of an ordinance non-redressable where an unchallenged provision of the ordinance caused denial of the billboard application); *see also New S. Media Grp., LLC v. City of Huntsville, Ala.*, No. 5:20-CV-2050-LCB, 2021 WL 5822133, at *13-14 (N.D. Ala. Oct. 1, 2021). So the court agrees with Rainbow City that Plaintiffs lack standing to bring each of these constitutional challenges.

—

In sum, Rainbow City's reading of Section 214's billboard ban caused Plaintiffs' injury. Plaintiffs do not argue that Section 214's billboard ban is unconstitutional. So this court cannot redress Plaintiffs' injury, thus stripping Plaintiffs' standing.

Perhaps Plaintiffs will challenge the City's reading of Section 214 (as opposed to its constitutionality) in state court. But, based on the way this case has been pleaded and litigated, this federal court lacks jurisdiction to make that call.

## CONCLUSION

For the reasons stated within, the court **GRANTS IN PART** Rainbow City's Motion for Summary Judgment (doc. 12) and **DENIES** Plaintiffs' Motion for Partial Summary Judgment as **MOOT**. (Doc. 29). The court will enter a separate order consistent with this memorandum opinion that dismisses this case **WITHOUT PREJUDICE**.

**DONE** and **ORDERED** on March 11, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE